In the Matter of ELIZABETH KAM, as Executrix, Petitioner, for Construction of the Will of OTTILIA KNICKENBERG, Deceased.

Surrogate's Court, Erie County, March 26, 1943.

*Robert Strebel* for petitioner.

VANDERMEULEN, S.   The decedent, Ottilia Knickenberg, formerly Ottilia Mischler, an incompetent person since 1931, died at the Buffalo State Hospital on December 7, 1942, leaving a last will and testament dated March 11, 1914, which was duly admitted to probate in this court and Elizabeth Kam was appointed executrix thereof.

At the time the testatrix executed her last will and testament, and at the time she died, she was a widow and had no living issue or descendants or parents then living.   At the time of the execution of her will, her heirs at law were Magdalena Pohl,

Theresa Kam, Elizabeth Kam and Frances Schrowe, sisters, Nicholas Kam and George Kam, brothers. Subsequent to the execution of the will and prior to testatrix's death, Magdalena Pohl, Nicholas Kam, George Kam (unmarried) and Theresa Kam (unmarried), died.

Magdalena Pohl left the following children: Natalie C. Knowlton; Florian J. Pohl, Hugh G. Pohl and Emily M. Miller. Nicholas Kam left the following children: Herbert Kam, Norman Kam, Nicholas Kam, Arthur Kam and J. Raymond Kam.

A construction is requested of the following paragraphs of the testatrix's last will and testament:

" *Fifth:* I give and bequeath to my beloved sister THERESA KAM, of Buffalo, N. Y., my diamond earrings and diamond brooch, to be hers absolutely and forever.

" *Sixth:* All the rest, residue and remainder of my property, real, personal and mixed, of whatever kind, name and nature and wheresoever situated, I give, devise and bequeath to my beloved sisters, ELIZABETH KAM and THERESA KAM, share and share alike, to be theirs absolutely and forever.

" I have not overlooked my other brothers and sisters, as I desire not to make any bequests to them, as I feel that my two single sisters should have my earthly belongings."

As to the articles of jewelry in paragraph " Fifth," these should be disposed of in accordance with section 29 of the Decedent Estate Law.

A construction of paragraph " Sixth " is necessary by reason of the death of Theresa Kam, so as to determine whether said death caused an intestacy as to one half of the residuary estate or whether the whole of the interest of Theresa Kam vested in Elizabeth Kam, the surviving unmarried sister.

The cardinal rule of testamentary construction is that the plain intent of the testator, as evinced by the language of the will, must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or statute prohibition.

Were it not for the wording that followed the bequest and devise to Elizabeth Kam and Theresa Kam, there would be no question but that the share of Theresa Kam, who predeceased the decedent, would pass by intestacy. But the immediately subsequent sentence indicating so strongly her desire not to leave anything by this testamentary instrument to other brothers and sisters calls for a careful consideration of what the intention of the testatrix was.

In one of the leading cases (*Hoppock* v. *Tucker*, 59 N. Y. 202, 208, 209) the Court of Appeals, in construing a clause in the will of the testatrix, said: " The clause contains a double description antagonistic in legal meaning. The description by names is a perfect bequest to them as individuals, while the other description as children of the deceased daughter, standing by itself, is a perfect bequest to them as a class. It must be conceded that the clause as it is written, with its double description free from the influence or control of other portions of the will, would, according to adjudicated cases, be construed as a personal legacy to each child. * * * The law infers this intent from the specification of names, and regards the descriptive portion of the clause as intended for identification. But there is no rule of law that gives to the terms an inflexible intent. * * * An intent inferable from the language of a particular clause may be qualified or changed by other portions of the will, evincing a different intent. The substance and intent rather than words are to control. * * * The intention of the testator is the first and great object of inquiry, and to this object technical rules to a certain extent are made subservient. * * * This presents a case for the application of these general and familiar rules. The language used is in a certain sense equivocal. Standing alone the law would give it a certain meaning, but it would do so only in obedience to a supposed intent. If by the light reflected from other provisions a different intent is discoverable, the reason of the rule fails and a different result is reached.''

It might be argued that because words of survivorship were not used in the residuary clause, it indicates an intention to leave this part of the estate to the two sisters as tenants in common, which if followed by the court means an intestacy as to the share of Theresa Kam. From the strict legal standpoint this may be true, but the failure to use the word " survivorship " could have been an oversight. The strict rule of law must yield to the clear intention of the testator. Imperfection of expression of testator's intention will not defeat his intention if it can be clearly ascertained from the will.

Due to carelessness or a failure to anticipate possible contingencies that may arise, wills often manifest inconsistencies in their provisions. Thus a provision in one or more clauses may be inconsistent with the general scheme of the testator. If the general intent is clearly expressed as is also the intent of the particular clause, the rule is that effect will be given such general intent, and the particular intent in the particular

clause will be disregarded. The general intent, though first expressed, overrules the particular intent, and a plain general purpose will not be subordinated to an apparent particular intent. (Thompson on Wills [2d ed.], pp. 218, 219, citing: *Crozier* v. *Bray*, 120 N. Y. 366; *Wechsler* v. *Drey*, 203 App. Div. 692.)

In *Matter of Douglass* (120 Misc. 193, 195) the court said: " It is elementary law, too familiar to require the citation of authorities, that the intent of the testator is first to be ascertained; that when this has been done the will is to be given effect in the light of that intent, if it can be legally done, no matter how imperfectly it may have been expressed, if the intent can actually and certainly be deduced from the language used; that the court may supply words to make clear that which for any reason was not clearly expressed, but no new provisions may be written in for the purpose of supplying that which the testator might be supposed to have intended to provide, but did not. In other words, the court may interpret but must not construct the will; it may make verbal corrections in elucidation of the evident intent, but may not rewrite testator's will for him. Having ascertained the provisions of the will, their meaning and intent, it then becomes the duty of the court to decide whether these provisions are legal." .

It might be contended that although the intention was to give the entire residue to Elizabeth Kam and Theresa Kam and nothing to the others, nevertheless it might not have been the intention to disinherit the others in the event of the death of one of the two sisters. In this connection the word " single " plays a part, as well as the family situation, gleaned from extrinsic facts established by evidence adduced by way of explanation in this matter. The will of the testatrix states, " as I feel that my two single sisters should have my earthly belongings." She could have stopped after saying this but did not, and the position of the petitioner is strengthened by the words that follow: " I have not overlooked my other brothers and sisters, as I desire not to make any bequests to them." What ideas the deceased may have had concerning the marital and financial status of her brothers and sisters as bearing upon the leaving of practically all her bounty to the single female members and not to the others, is somewhat speculative to be sure, but this court feels there is sufficient in the language used to warrant it in believing that the intention of the testatrix was to give all her residuary estate to her single sisters and none to her other brothers and sisters.

There are certain presumptions that add some strength to the inclination of the court in deciding this matter.

The law favors testacy rather than intestacy and the presumption is against intestacy. (*Matter of Oakley*, 135 Misc. 262; *Matter of Low*, 136 Misc. 532.)

It is a presumption of law that the testator did not intend to die intestate as to any portion of this property and a construction is to be preferred which will prevent total or partial intestacy. (*Haug* v. *Schumacher*, 166 N. Y. 506.)

There is a general and well-settled rule that where the persons to take are named and their shares fixed, they take as tenants in common and not as a class. (*Matter of King*, 200 N. Y. 189; *Matter of Hoffman*, 201 N. Y. 247; *Matter of Barrett*, 132 App. Div. 134.) But like every rule, this rule has its exceptions, or rather it yields to others equally as well settled when the will and surrounding circumstances plainly show an intention inconsistent with the application of the rule in question. (*Matter of Hawley*, 76 Misc. 81.)

And although it is a rule that, where an aggregate sum is given to several to be divided among them *nominatim*, if any of them dies before the testator his share will lapse; yet the mere fact that he mentions by name the individuals who make up the class is not conclusive, and, if the intention to give a right of survivorship is collected from the remaining provisions, said contention must prevail. (*Matter of Armstrong*, 125 Misc. 153; *Roosevelt* v. *Porter*, 36 Misc. 441; *Page* v. *Gilbert*, 32 Hun, 301.)

It is therefore decided that the entire residuary estate is devised and bequeathed to Elizabeth Kam, absolutely.

Let a decree enter accordingly.