Harry G. Herman, S.
In this executor’s accounting proceeding the court is asked to determine the effect of a bequest of “ [a]ll money left after my lawful debts are paid ” as a disposition of the residuary estate among three named individuals, one of whom predeceased the testatrix.
After gifts for a monument and perpetual care and specific bequests of certain tangible personal property, the testatrix bequeathed in article “ fifth ” of her will, dated August 12, 1950: ‘' All money left after my lawful debts are paid and all money paid to Woodlawn Cemetery as requested by me in part 2 is to be divided between ” Louise Herndon, Cora Miller and Mabel Faust. This was followed by article “ sixth ” which directed that: ‘ ‘ My house at 40 Card Ave. is to be sold and the money received goes to my estate.”
There were no later dispositive provisions.
Louise Herndon, who was not related to the testatrix, predeceased her, dying on June 30, 1958. The testatrix died on May 2,1962 and was survived by both Cora Miller, who was not related to the testatrix, and Mabel Faust, a cousin of the testatrix, who died subsequently on September 2, 1963. The house referred to in article “ sixth ” was sold by the testatrix during her lifetime.
*413 Cora Miller contends that article 1 ‘ fifth ’ ’ of the will, disposing of “ [a] 11 money”, is the true residuary clause. The special guardian for two of the testatrix’ distributees, whose whereabouts are unknown, agrees.
The assets of the estate at the death of the testatrix, as shown by the account, included stock, valued at $51,089.06; contents of home and safe-deposit box, valued at $1,538; two coats, valued at $700; and cash in the sum of $312.74; for a total of $53,639.80. Usually, the word “money” will not include the personal estate in general, but only cash (Matter of Hinds, 270 App. Div. 408, affd. 296 N. Y. 648). However, in that case the legacy in question was followed by a general residuary clause. Taken together with the words of article “ sixth ” of the will, the court determines that the testatrix intended a liquidation of all property, real and personal, and conversion to cash (Matter of Alexander, 20 Misc 2d 983, 986, app. dsmd. 10 A D 2d 819). Under such circumstances, the bequest of “ money ” will include all personal property, even though the bulk of the estate be in stocks (Matter of Smith, 131 N. Y. S. 2d 390, 391).
The fact that article “ fifth ” was not the last provision in the will does not change this result, although it bears on the intention of the testatrix. So long as article ‘ ‘ fifth ’ ’ is fairly susceptible of being construed as a residuary clause, and the will indicates that intent, it should be so interpreted regardless of its position in the will ” (Morton v. Woodbury, 153 N. Y. 243, 252).
Accordingly, the court holds that article ‘ ‘ fifth ’ ’ of the will is the true residuary clause and embraces all personal property owned by the decedent at the time of her death not otherwise specifically disposed of in the will (Matter of Leonard, 6 Misc 2d 157).
The special guardian urges that the residuary legacy to Louise Herndon lapsed when she predeceased the testatrix and that as to such one-third share decedent died intestate; that this bequest was not saved by the statutory exception contained in section 29 of the Decedent Estate Law; and that since there can be no “residue of a residue ”, the shares of the other residuary legatees cannot be augmented by the lapsed residuary share of Louise Herndon (Wright v. Wright, 225 N. Y. 329, 340-341, rearg. den. 226 N. Y. 578; Oliver v. Wells, 254 N. Y. 451, 457-458; Matter of Hicks, 7 Misc 2d 344; Matter of Hanretty, 34 N. Y. S. 2d 171).
Cora C. Miller, on the other hand, argues that the “ residue of a residue ” rule does not apply here, alleging that the testatrix intended in her residuary disposition to provide a gift to *414 a class, consisting of such of Louise Herndon, Cora Miller and Mabel Faust as should survive the testatrix (Matter of Young, 133 Misc. 454, 456-457).
However, the will contains no indication of an intent that the gift therein provided for was to be one to a class (see 2 Davids, New York Law of Wills [1924], § 651, pp. 1085-1087). A gift to a class will not be found unless there is uncertainty as to the number of shares, or the takers of the shares, the members of the class being ascertainable only at a time subsequent to the date of the execution of the will (2 Davids, supra, § 651), or unless the testator intended that there be the possibility of fluctuation in the number of takers (3 Powell, Real Property [1952], par. 352, p. 84). Where as here the will fixes the shares and designates by name the persons among whom the property is to be divided, it will be presumed in the absence of any indication of a contrary intent that the gift is not one to a class (Matter of Kimberly, 150 N. Y. 90, 93; 3 Restatement, Property [1940], § 280; 2 Davids, supra, §§ 651, 652; 3 Powell, supra, par. 353, p. 89). Those designated by the testatrix to share herein not only are named, but they bear no common relationship to the testatrix or to each other, since they are not children or more remote issue or descendants of a common ancestor (see 2 Davids, supra, § 651).
Although the bequest is not one to a class, the testatrix could have avoided intestacy as to any residuary legatee predeceasing her by giving the residuary estate to the individuals named or the survivor or survivors (2 Davids, supra, § 693, pp. 1160-1162; Matter of Smith, 131 N. Y. S. 2d 390, 392, supra; cf. Matter of Fitzpatrick, 21 A D 2d 946). This she did not do, there being no provision for survivorship.
The rule that there can be no “ residue of a residue ” has received much criticism in recent years (see Matter of Dammann, 12 N Y 2d 500). If the will expressly disinherits those who would take by intestacy, the court may find an intention that the rule not be applied (Matter of Dammann, supra). The Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates has twice proposed a new section 29-a of the Decedent Estate Law, in 1963 and in 1964, which would in effect abolish the rule (see 2d Rep. [1963], pp. 494-511, 3d Rep. [1964], pp. 896-902), but this proposed legislation has not been enacted. The Legislature having failed to alter or repeal the rule, the decisions of the Court of Appeals upholding the rule are controlling.
Accordingly, it is held that, by the death of Louise Herndon, her share lapsed, and passes by intestacy.
*415 The remaining questions raised by the report of the special guardian Avith regard to the account are disposed of as follows:
The accounting party shall submit a revised Schedule ‘ ‘ C-l ’ ’ apportioning the estate tax in accordance with the respective benefits received, as determined by this decision, and section 124 of the Decedent Estate Luav.
As to Schedule ‘ ‘ A-l ’ ’ of the account, if the accountant and special guardian are unable to agree as to whether the stated sales price for the General Motors stock is in error, the special guardian should file a supplemental report on this item. In the event that the stock Avas sold at a price higher than indicated, the commissions set forth in Schedule “ G” should be recomputed on the basis of the higher valuation.
The special guardian’s report Avith respect to Schedule " E ”
fails to indicate any improprieties in payments on accounts of the residuary legacies in vieAV of the fact that more than seven months had then elapsed since letters testamentary were issued and the preresiduary legacies had been paid (Surrogate’s C't. Act, § 218). The provisions for perpetual care and for a monument for others are valid bequests for charitable purposes (Personal Property Luav, § 13-a), and are not expenses of administration.
The contention of the special guardian as to Schedule “ B ” is Avithout merit.